22005

SHASTA BEVERAGES (A DIVISION OF CONSOLIDATED FOODS COR-PORATION) (and six other appellants in six separate cases identical to its case, namely Welch Foods, Inc., Specialized Beverages, Inc., Deep South Products, Inc., Tropicana Products, Inc., Royal Crown Cola Company of Columbus, Georgia, and A. M. Braswell, Jr. Food Co., Inc.), Respondents, v. SOUTH CAROLINA TAX COMMISSION, Appellant.

(310 S. E. (2d) 655)

*Atty. Gen. T. Travis Medlock, Deputy Atty. Gen. Joe L. Allen, Jr.,* and *Asst. Atty. Gen. Ronald W. Urban,* Columbia, *for appellant.*

*Wesley M. Walker* and *Jack H. Tedards, Jr., Leatherwood, Walker, Todd & Mann,* Greenville, *for respondents.*

Nov. 17, 1983.

LITTLEJOHN, Justice:

These cases were before the trial court on motions of both the Plaintiffs-Respondents (Bottlers) and the Defendant-Appellant (Tax Commission) for summary judgment. At issue

before the trial court, and now before this Court, is whether certain provisions of the South Carolina soft drink statutes are unconstitutional because they violate the Commerce Clause (Article I, Section 8, Clause 3) of the United States Constitution. The trial judge held the statutes to be violative of this constitutional provision; we agree and affirm. Attention is called to our Opinion in the case of *Shasta Beverages v. South Carolina Tax Commission*, 278 S. C. 156, 293 S. E. (2d) 429 (1982), wherein we reversed an order which sustained demurrer interposed by the Tax Commission.

As we now affirm the ruling of the lower court, we rely heavily upon the order of the trial judge, using substantial portions of his decree.

The several bottlers who brought these actions are manufacturers and bottlers of "soft drinks," as that term is used in the South Carolina soft drink tax statutes (Title 12, Chapter 21, Article 13, of the *Code of Laws of South Carolina* (1976). The Bottlers contend that certain provisions of the statutes discriminate against them because of the fact that they conduct their business in interstate commerce, and that they are, therefore, unconstitutional. Those statutory provisions challenged are § 12-21-2050, which limits the availability of a discount and exemption in the amount of annual tax, and § 12-21-2120, which provides an alternate method of paying the tax but limits its use to certain bottlers.

We conclude that both of these provisions are unconstitutional under the Commerce Clause of the United States Constitution. The Bottlers are, therefore, entitled to the refunds which are claimed in these actions and are entitled to receive the exemptions and discount which has been denied them by § 12-21-2050. They are also entitled to the option of paying their soft drink taxes in the manner provided by § 12-21-2120.

The Bottlers paid their soft drink taxes under protest for the periods in question and then filed claims for refunds for that portion representing the exemption and discount amounts pursuant to § 12-47-440. They also asked the Tax Commission to declare that they would, thereafter, be afforded the same benefits of the tax exemption and discount (§ 12-21-2050) and the alternate reporting method of paying the taxes (§ 12-21-2120) which are available to the other bottlers. The claims were denied.

There was before the trial court the full record made before the Tax Commission, including the claims for refunds, stipulation of certain facts, transcript of the proceedings, the exhibits, and the proposed findings of fact submitted by the Bottlers. There was also before the judge the decision of the Commission.

Since there is no dispute as to the facts, or the inferences to be drawn from those facts, the trial court properly found that summary judgment was appropriate. *See, Sermons v. Caine & Estes Ins. Agency,* 275 S. C. 506, 273 S. E. (2d) 338 (1980). Also, compare *Maryland v. Louisiana,* 451 U. S. 725, 101 S. Ct. 2114, 68 L. Ed. (2d) 576 (1981), where the United States Supreme Court held that discriminatory state tax statutes similar in many respects to those at issue here were unconstitutional for violation of the Commerce Clause based solely upon the language of the statutes themselves, without any evidentiary hearing.

Our previous opinion, *Shasta Beverages, supra,* summarizes the statutes involved in this case and the nature of the Bottlers cause of action. Basically, the soft drink tax is assessed on the volume of the product sold. Section 12-21-2030 provides certain exemptions and discounts for the first 30,000 gross per year, amounting to a maximum discount of $20,850 per year for a single bottler. However, § 12-21-2050, enacted in 1971, requires that in order to receive this discount, a bottler must market its goods on its own ". . . leased or owned soft drink trucks . . . in the normally accepted store-door delivery method."

As the Bottlers point out, store-door delivery on the Bottlers' own truck is the direct opposite of an interstate commerce method of doing business. If a bottler conducts store-door delivery on its own trucks, then by definition it is no longer conducting its business solely in interstate commerce, as it has a right to do. The discrimination against interstate commerce is apparent from the statutes themselves. *Maryland v. Louisiana, supra.*

The Bottlers' interstate commerce business operations involve the interstate shipment of their products to wholesalers or distributors within the State of South Carolina, with the wholesalers or distributors then selling the products to retail outlets. The Commerce Clause protects the right of the plain-

tiffs to do business in this manner and prohibits any tax discrimination arising from their choice of business operations. If the Bottlers are forced to conduct store-door delivery in South Carolina in order to receive the tax discount, then they are being forced to give up their right to conduct their business solely in interstate commerce in order to receive the same tax advantage available to local bottlers. We conclude that this constitutes a clear violation of the Commerce Clause.

The Bottlers also challenge § 12-21-2120, involving the reporting method of paying the soft drink tax. We describe the effect of this section as follows:

In 1975, the General Assembly extended a further break to bottlers by means of a new tax reporting system. Crowns, lids and stamps can be completely disregarded and manufacturers can now simply post bond and submit reports annually. 1975 Act No. 176, Codified as Code Section 12-21-2120. The benefit is expressly limited to bottler qualifying under the terms of Code Section 12-21-2050, with the exception that manufacturers who fail to meet these qualifications can still use this reporting method if their plants are located in this State.

*Shasta Beverages v. South Carolina Tax Commission, supra.*

Thus, the discriminatory aspect of § 12-21-2050 is carried forward into § 12-21-2120, but the discrimination is made even clearer by the provision that the reporting method shall be available to any bottler whose plant is located in the State of South Carolina. Again, we conclude that this constitutes a violation of the Commerce Clause.

One of the most fundamental principles of the Commerce Clause is its prohibition of a discriminatory tax against interstate commerce:

[N]o State may discriminatorily tax the products manufactured or the business operations performed in any other State.

*Boston Stock Exchange v. State Tax Commission,* 429 U. S. 318, 337, 97 S. Ct. 599, 610, 50 L. Ed. (2d) 514 (1977), and *Maryland v. Louisiana, supra.*

The United States Supreme Court applies a four-part test to determine the constitutionality of state taxes with relation to

interstate commerce. *Complete Auto Transit, Inc. v. Brady*, 430 U. S. 274, 279, 97 S. Ct. 1076, 1079, 51 L. Ed. (2d) 326 (1977). One part of that test is the absolute prohibition of any discrimination against interstate commerce. In this respect, the *Complete Auto Transit* case reaffirmed a long standing rule of Commerce Clause jurisprudence. See, for example, *Nippert v. City of Richmond*, 327 U. S. 416, 66 S. Ct. 586, 90 L. Ed. 760 (1946), and *Best & Co. v. Maxwell*, 311 U. S. 454, 61 S. Ct. 334, 85 L. Ed. 275 (1940).

There can be no doubt that the statutes in question (§ 12-21-2050 and § 12-21-2120) impose a discriminatory tax burden upon interstate commerce. To begin with, the evidence in the record is undisputed that a bottler whose facilities are located more than a relatively few miles outside the State of South Carolina simply could not comply with the requirements of § 12-21-2050 because of the inordinate expense which would be involved in having soft drink trucks traveling between the plant and the South Carolina customers in order to conduct store-door delivery on the Bottlers' own trucks.

But it is not necessary to rely solely upon this fact, because the discrimination against interstate commerce is apparent from the statutes themselves. A bottler conducting business in the manner prescribed by § 12-21-2050 is, by definition, not doing business purely in interstate commerce, and vice versa. The Tax Commission has acknowledged this point, in effect, by arguing to this Court that the Bottlers could qualify under § 12-21-2050 by establishing warehouses in South Carolina as the local bottlers do. The Tax Commission further suggests that the Bottlers' failure to comply with § 12-21-2050 is due solely to their election not to do business in this fashion.

This argument by the Tax Commission must fail for a most fundamental reason. The Bottlers have elected to do an interstate commerce business, and the Commerce Clause of the United States Constitution protects their right to elect to do business in that fashion without being subjected to discriminatory taxation. The Tax Commission is arguing that the Bottlers could avoid discrimination against their interstate commerce business by ceasing to do a part of their business in interstate commerce. The fundamental point of the Commerce Clause, however, is that a company has a constitutional right to conduct its business entirely in inter-

state commerce, and it cannot be subjected to discriminatory taxation by virtue of that choice. The United States Supreme Court has made it clear that a state cannot impose a tax which would require an interstate commerce business to transfer a part of its business operations to the taxing state in order to receive equal tax treatment. *Halliburton Oil Well Cementing Co. v. Reily*, 373 U. S. 64, 72-73, 83 S. Ct. 1201, 1205-06, 10 L. Ed. (2d) 202 (1963), *Boston Stock Exchange v. State Tax Commission, supra; Best & Co. v. Maxwell, supra.*

The State of North Carolina Court of Appeals has previously declared similar soft drink statutes unconstitutional as a discriminatory burden on interstate commerce. *Richmond Food Stores, Inc. v. Jones*, 22 N. C. App. 272, 206 S. E. (2d) 346 (1974).

The defendant argues that the discrimination in the tax treatment of the Bottlers is permissible because it results from a "reasonable classification" by the General Assembly, in that there are differences between the store-door delivery method of selling soft drinks and an interstate commerce method. The question of the reasonableness of a classification is a familiar issue in cases dealing with the Equal Protection Clause, but the Tax Commission has cited no authority, and the Court is aware of none, to suggest that the nature of the classification creates any exception to the Commerce Clause prohibition of discriminatory taxation of interstate commerce.

Nonetheless, in equal protection cases it is necessary for the classification to have a rational basis in order to survive a constitutional attack. We are unpersuaded by the Tax Commission's argument that these classifications are necessary to assure that rural South Carolinians will have soft drinks delivered to them.

The Tax Commission also argues that the Bottlers, even though they have admittedly been required to pay the soft drink tax in order to sell their products in South Carolina, are not actually the taxpayers under the South Carolina soft drink statutes, and are thus not entitled to any refund. This issue has been resolved adversely to the defendant by the prior decision of this Court in *Shasta Beverages v. South Carolina Tax Commission, supra.*

Furthermore, the soft drink tax statutes clearly contemplate payment of the tax by the bottler or manufacturer, "either within or without the State," thereby recognizing that an out-of-state bottler or manufacturer can be the taxpayer. (§ 12-21-1980.)[1] Additionally, the United States Supreme Court has made it clear that questions under the Commerce Clause are to be resolved in light of the practical consequences of the taxing statutes, and there can be no doubt that the Bottlers have been required to pay the tax and are the ones entitled to the refund under this rule. *Halliburton Oil Well Cementing Co. v. Reily, supra; Nippert v. City of Richmond, supra; Best & Co. v. Maxwell, supra.* We find this argument by the Tax Commission to be without merit.

The Tax Commission's argument that there can be no discriminatory burden upon interstate commerce in this instance because the tax is not imposed until the goods have come to rest within this state, has been decided by us to the contra in *Shasta, supra.*

The Tax Commission further argues that the refund claimed by the bottlers would constitute unjust enrichment. We have previously, in *Shasta, supra,* found that the Bottlers "certainly ... have a financial interest in the taxes in question." The Tax Commission fails to explain how it, as a third party, has standing to raise the theory of unjust enrichment. *United States Rubber Products v. Town of Batesburg,* 183 S. C. 49, 55, 190 S. E. 120, 123-24 (1937); 66 Am. Jur. (2d). *Restitution and Implied Contracts,* Section 4. We conclude that no defense based upon this doctrine is applicable to the present facts.

---

[1] To the extent that any differences in the soft drink statutes must be resolved on this point, it is fundamental that the statues should be interpreted consistently if possible, giving meaning to all provisions. This can be accomplished only by the interpretation that the tax on products bottled outside the state may be paid either by the out-of-state bottler or the in-state distributor, but must be paid by one or the other. The bottlers are clearly taxpayers under this interpretation.

Even if there were some ambiguity, the unquestioned interpretation by the South Carolina Tax Commission (recognizing that the out-of-state bottlers not only can, but must, pay the tax in order to sell their products in South Carolina) is most significant in the interpretation of the statutes. *Faile v. South Carolina Employment Security Commission.* 267 S. C. 536, 540, 230 S. E. (2d) 219, 221 (1976); *Etiwan Fertilizer Co. v. South Carolina Tax Commission,* 217 S. C. 354, 359, 60 S. E. (2d) 682, 684 (1950).

Finally, the Tax Commission argues that the tax statutes themselves should not be declared unconstitutional, but rather only the administrative interpretation of those statutes. We are skeptical that any other administrative interpretation could be applied to these statutes which would not impose some form of discriminatory burden on interstate commerce, but that is not the question presently before the Court for decision. It is not the role of this Court to advise the legislative or executive branches how to proceed, nòr to render an advisory opinion on a hypothetical situation. *Booth v. Grissom*, 265 S. C. 190, 217 S. E. (2d) 223 (1981).

It remains only to clarify the effect of this holding of unconstitutionality and to specify the relief to which the Bottlers are entitled.

Section 12-21-2050 contains a single concept and is unconstitutional in its entirety. The result of this is to leave in force § 12-21-2030, which provides for the tax exemption and discount and makes it available to all bottlers. Consequently, the Bottlers, and others in their circumstances, will be entitled to the exemption and discount provided by Section 12-21-2030, according to the terms and conditions of that section.

The Bottlers are likewise entitled to the refunds which they have sought in these actions representing exemption and discount amounts previously denied to them because of § 12-21-2050. The parties have disagreed as to the amounts of these refunds, but the Court finds that the amounts claimed by the Bottlers are the correct figures. These figures were originally computed by the Director of the License Tax Division, and he testified that these figures are in accordance with the procedures which have been followed by the Tax Commission, through its License Tax Division, in the administration of the soft drink tax. To the extent that there might be ambiguity, the long-established administrative practice of the License Tax Division should be controlling in the resolution of this ambiguity. Accordingly, the Bottlers are entitled to refunds for the periods covered by these claims in the following amounts.

| | |
|---|---|
| Shasta Beverages | $83,400.00 |
| Welch Foods | $29,501.96 |
| Specialized Beverages, Inc. | $66,307.60 |

Deep South Products, Inc. ................. $83,117.46
Tropicana Products, Inc. ................. $45,706.08
Royal Crown Cola Company of
    Columbus, Georgia .................... $37,027.00
A. M. Braswell, Jr. Food Co., Inc. ......... $31,798.59

The Bottlers are also entitled to recover interest on these amounts, to be computed in accordance with § 12-47-60.

The Court is advised that other refund claims have been filed and have been held in abeyance by the Tax Commission, pending the outcome of this litigation. Some of those involve claims by these same Bottlers for periods of time subsequent to the years involved in the present cases. Counsel appear to agree that those claims will be governed by the outcome of this litigation, but of course the Court is now deciding only those claims and issues which are presently before the Court.

Finally, with respect to § 12-21-2120, it is only that provision which limits the use of the reporting method of tax payment that is constitutionally invalid. Applying established principles of construction, we conclude that the remainder of the statute is severable and should continue in force and effect. It is our opinion that the General Assembly would not have intended all bottlers to return to the antiquated use of tax crowns and lids for the payments of their tax in the event the limitation provision is found to be invalid, and the limitation provision of this section is not "so connected with the other parts as that they mutually depend upon each other as conditions and considerations for each other." *Aiken County Board of Education v. Knotts*, 274 S. C. 144, 150, 262 S. E. (2d) 14, 18 (1980). Accordingly, the reporting method should simply be made available to the claimants here and to all other bottlers in their circumstances who are paying soft drink taxes to the State of South Carolina.

It is, therefore, held:

(1) That § 12-21-2050 of the *South Carolina Code of Laws* (1976), as amended, is unconstitutional in its entirety as a violation of the Commerce Clause (Article I, Section 8, clause 3) of the United States Constitution.

(2) That the following parts of § 12-21-2120 of the *South Carolina Code of Laws* (1976), as amended, are unconstitu-

tional in that they violate the Commerce Clause (Article I, Section 8, clause 3) of the United States Constitution:

(i) The following portion of the first sentence of that Section: "which qualifies for the crown tax exemption and reduced rates under § 12-21-2050;" and

(ii) The last sentence of that section, which reads: "Any manufacturing soft drink plant located within this State, which does not meet the qualifications set forth in § 12-21-2050, may file its report in accordance with this section."

(3) That the remainder of § 12-21-2120 is severable and, with the deletion of those portions set out above, shall remain in full force and effect.

(4) That the Bottlers are entitled to judgment in the respective amounts set forth below, plus interest as computed in accordance with § 12-47-60:

| | |
|---|---|
| Shasta Beverages | $83,400.00 |
| Welch Foods | $29,501.96 |
| Specialized Beverages, Inc. | $66,307.60 |
| Deep South Products, Inc. | $83,117.46 |
| Tropicana Products, Inc. | $45,706.08 |
| Royal Crown Cola Company of Columbus, Georgia | $37,027.00 |
| A. M. Braswell, Jr. Food Co., Inc. | $31,798.59 |

(5) That the Bottlers are henceforth entitled to the tax exemption and discount provided by § 12-21-2030, in accordance with its terms.

(6) That the Bottlers are henceforth entitled to use the reporting method of tax payment provided by § 12-21-2120, in accordance with that portion of § 12-21-2120 which remains in full force and effect under the terms of this order.

(7) The order of the trial court is

Affirmed.

LEWIS, C. J., and NESS, GREGORY and HARWELL, JJ., concur.